George W. Goodman, OSB #794984
gwg@cumminsgoodman.com
James S. Anderson, OSB #051885
jsa@cumminsgoodman.com
Cummins, Goodman, Denley & Vickers, P.C.
P.O. Box 609
Newberg, OR  97132-0609
Telephone:  (503) 476-8200
Attorneys for Plaintiffs.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| **OREGON MANUFACTURERS AND COMMERCE,** an Oregon non-profit association, **ASSOCIATED OREGON LOGGERS, INC.,** an Oregon non-profit association, **and OREGON FOREST & INDUSTRIES COUNCIL,** an Oregon non-profit association, | **CASE NO.  1:22-cv-00875** |
| Plaintiffs, | |
| **v.** | |
| **OREGON OCCUPATIONAL SAFETY AND HEALTH DIVISION,** a division of the Oregon Department of Consumer and Business Services, **RENEE STAPLETON,** in her official capacity as acting administrator for the Oregon Occupational Safety and Health Division, **OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES,** an Agency of the State of Oregon, **and ANDREW STOLFI,** in his official capacity as the Director of the Oregon Department of Consumer and Business Services, | **COMPLAINT** |
| Defendants. | |

NOW COMES OREGON MANUFACTURERS AND COMMERCE, ASSOCIATED

OREGON LOGGERS, INC., AND OREGON FOREST & INDUSTRIES COUNCIL,

Page 1 - COMPLAINT

(collectively Plaintiffs), and file this Complaint for declaratory and injunctive relief stating as follows:

## PARTIES

1.

Plaintiff Oregon Manufacturers and Commerce ("OMC") is an Oregon non-profit corporation.  It is an association of approximately 16 Oregon companies employing thousands of Oregonians which is dedicated to promoting, protecting, and advancing Oregon manufacturers and their allied partners in commerce.

2.

Plaintiff Associated Oregon Loggers, Inc. ("AOL") is an Oregon non-profit corporation. It is a statewide trade association representing some 1,000 member companies engaged in the harvest and sustainable forest management of Oregon's 30 million acres of forestland.

3.

Plaintiff Oregon Forest & Industries Council ("OFIC") is an Oregon non-profit corporation.  It is a trade association representing more than 50 Oregon forestland owners and forest products manufacturers.  OFIC members protect and manage more than five million acres of Oregon forestlands, employ nearly 60,000 Oregonians, and make Oregon the nation's largest state producer of softwood lumber and plywood.

4.

Defendant Oregon Occupational Safety and Health Division ("OR-OSHA") is a Division of the Oregon Department of Consumer and Business Services.

5.

Defendant Renee Stapleton is the Acting Administrator of OR-OSHA.

Page 2 - COMPLAINT

6.

Defendant Oregon Department of Consumer and Business Services ("DCBS") is an Oregon State Agency.

7.

Defendant Andrew Stolfi is the Director of the Oregon DCBS.

**JURISDICTION AND VENUE**

8.

This action arises under federal law, including the 14th Amendment to the United States Constitution, 42 U.S.C. §1983 and §1988, to redress the deprivation, under the color of state law, of rights, privileges, and immunities secured to Plaintiffs by the Constitution of the United States.

9.

Subject matter jurisdiction is appropriate in this Court under 28 U.S.C. §1331 and 28 U.S.C. §1343.

10.

Supplemental jurisdiction over the state law claims stated herein is appropriate under 28 U.S.C. §1367, as the claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy between the parties.

11.

This Court has personal jurisdiction over Defendants because they have committed acts in this District that violate the rights of Plaintiffs' members which are protected by the Constitution of the United States.

Page 3 - COMPLAINT

12.

Venue is appropriate under 28 U.S.C. §1391 as the events giving rise to these claims occurred in this judicial district and will affect Plaintiffs' members' activities within the judicial district.

13.

Divisional venue pursuant to LR 3-2 is appropriate as the challenged rules will have a substantial impact upon the activities of Plaintiffs' members within this District.

14.

Plaintiffs request a declaration of their rights under the Constitution of the United States. The Court may declare the rights of Plaintiffs and grant further necessary and proper relief based thereon, including injunctive relief under to Fed. Civ. P. 65.  28 U.S.C. §§ 2201-2202.

**FACTUAL ALLEGATIONS**

15.

Plaintiffs' members are substantially comprised of Oregon employers who will be subject to regulations recently adopted by Defendant OR-OSHA related to regulation of employee exposure to wildfire smoke and apparent temperatures (heat index) in excess of 80 degrees Fahrenheit.

16.

As employers subject to enforcement of OR-OSHA's recently adopted regulations, Plaintiffs' members have standing to bring this action in their own right and, in consideration of judicial economy and efficiency, have requested that Plaintiffs bring the action to the court on behalf of their respective members.

/ / / /

17.

The interests Plaintiffs seek to protect are germane to Plaintiffs' purposes as trade associations.

**A. The Wildfire Smoke Rules**

18.

On May 10, 2022, Defendant Oregon Occupational Safety and Health Division ("OR-OSHA") adopted Oregon Administrative Rules ("OAR") 437-002-1081 and 437-004-9791.  (Ex. 1.).

19.

Both rules are entitled "Protection from Wildfire Smoke" and have an effective date of July 1, 2022.

20.

While the text of the rules is identical in relevant manner for purposes of this Complaint, OAR 437-002-1081 applies to general industry, while OAR 437-004-9791 applies to places of employment subject to the rules for agriculture in Division 2 of Chapter 437.

21.

Defendant OR-OSHA's "Rulemaking Summary" makes clear that employers covered under Division 3 (Construction) and Division 7 (Forest Activities) of Chapter 437, must also comply with OAR 437-002-1081.

22.

The Scope and Application sections of both OAR 437-002-1080 and OAR 437-004-9791 are identical and provide in part that:  "This standard applies to public and private sector employers whose employees **are or will be exposed to wildfire smoke** where the ambient air

Page 5 - COMPLAINT

concentration for fine particulate matter (PM2.5) is at or above 35.5 µg/m3 (Air Quality Index value of 101 for PM2.5)." Emphasis added.

23.

The rules' requirements therefore apply to employers whose employees are or will be exposed to wildfire smoke when such exposure coincides with a PM2.5 Air Quality Index level of at least 101 for a particular work location but do not distinguish between contributions to the Air Quality Index level from wildfire smoke in comparison to other pollutants.

24.

Both OAR 437-002-1080 and OAR 437-004-9791 contain an identical definition of wildfire smoke: "Emissions from unplanned fires in wildlands, which may include adjacent developed and cultivated areas to which the fire spreads or from where it originates."

25.

Both OAR 437-002-1080 and OAR 437-004-9791 contain an identical definition of the AQI: "The Air Quality Index (AQI) was developed by the U.S. Environmental Protection Agency (EPA) as an indicator of overall air quality and is based on the five criteria pollutants regulated under the Clean Air Act: ground-level ozone, particulate matter, carbon monoxide, sulfur dioxide, and nitrogen dioxide."

26.

Both OAR 437-002-1080 and OAR 437-004-9791 contain provisions requiring employers to provide training, perform exposure assessments, and implement exposure controls if employees may be or are exposed to ambient air concentration not limited to wildfire smoke in particular, but to PM 2.5 at or above an AQI of 101.

/ / / /

Page 6 - COMPLAINT

27.

Both OAR 437-002-1080 and OAR 437-004-9791 contain provisions advising

employers that they can comply with the requirements to monitor the AQI for PM2.5 levels at

their work sites by:

(a) checking the current average and forecasted AQI value for PM2.5 from the Oregon

Department of Environmental Quality, U.S. EPA AirNow or Interagency Wildland Fire

Air Quality Response Program websites, or equivalent source;

(b) checking notifications of air quality advisories due to wildfire smoke issued by the

Oregon Department of Environmental Quality or local government health agencies;

(c) directly measuring workplace ambient air concentration for PM2.5 in accordance with the

testing device manufacturer's user instructions; or

(d) if the employer determines and can demonstrate that none of the methods in subsections

(3)(a) through (3)(c) of this standard are available for their work location, the employer

can then use the 5-3-1 Visibility Index provided in Appendix B, Table 1 of this standard

to estimate the current air concentration for PM2.5, and equivalent AQI value, during

daylight hours.

28.

Neither OAR 437-002-1080 nor OAR 437-004-9791 contains any method by which an

employer can determine whether any particulates from wildfire smoke are contained within the

PM2.5 contaminants present at a given work site, no less the extent of contribution, which in turn

makes it infeasible to identify when and if the rules are applicable to a particular work site.

/ / / /

/ / / /

Page 7 - COMPLAINT

**B.  The Ambient Heat Rules**

29.

On May 9, 2022, Defendant Oregon Occupational Safety and Health Division ("OR-OSHA") adopted Oregon Administrative Rules ("OAR") 437-002-0156 and 437-004-1131. (Ex. 2).

30.

Both rules are entitled "Heat Illness Prevention" and have an effective date of June 15, 2022.

31.

While the text of the rules is identical in relevant manner for purposes of this Complaint, OAR 437-002-0156 applies to general industry, while OAR 437-004-1131 applies to places of employment subject to the rules for agriculture in Division 2 of Chapter 437.

32.

Defendant OR-OSHA's "Rulemaking Summary" makes clear that employers covered under Division 3 (Construction) and Division 7 (Forest Activities) of Chapter 437 must also comply with OAR 437-002-0156.

33.

The Scope and Application sections of both OAR 437-002-0156 and OAR 437-004-1131 are identical and provide in part that the standard apply:  "whenever an employee performs work activities, whether in indoor or outdoor environments, where the heat index (apparent temperature) equals or exceeds 80 degrees Fahrenheit."

/ / / /

/ / / /

34.

Both OAR 437-002-0156 and OAR 437-004-1131 contain requirements for employers to develop and implement a written heat illness prevention rest break schedule for workers when the heat index at a work site is 90 degrees Fahrenheit or greater.

35.

While the rest breaks are permitted to coincide with other unpaid breaks required by law, both rules specifically state that if the heat rest breaks do not coincide with existing unpaid mail breaks, the heat illness prevention rest break is a "work assignment."

36.

By designating the heat illness prevention work breaks as a "work assignment," Defendants are effectively requiring employers to pay workers for these mandated heat illness prevention breaks.

37.

Both OAR 437-002-0156 and OAR 437-004-1131 contain requirements for employers to develop and implement a written acclimatization plan for workers.

38.

While the rules permit employers to develop and implement their own plans, the rules do not provide requirements for exactly when such plans are triggered, how long such plans must be implemented if the weather changes or what type of employer-specific plan would be considered not in compliance.

/ / / /

/ / / /

/ / / /

Page 9 - COMPLAINT

## FIRST CLAIM FOR INJUNCTIVE RELIEF

## AS TO OAR 437-002-1080 AND OAR 437-004-9791

### Count 1

### (Violation of Constitutional Due Process)

39.

Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-38 above as if fully set forth herein.

40.

OAR 437-002-1080 and OAR 437-004-9791 fail to provide employers, including Plaintiffs' members, with a means to determine if wildfire smoke particulates are contained within the PM2.5 contaminants at a particular work site, thus making the rules applicable to that work site.

41.

OAR 437-002-1080 and OAR 437-004-9791 provide inconsistent requirements as to what metric should be utilized to measure the PM2.5 levels at a work site (AQI, AQI Now, AQI average) rendering employers, including Plaintiffs' members, unable to definitively determine whether they are in compliance with the rules' requirements.

42.

OAR 437-002-1080 and OAR 437-004-9791 require use of a metric for measuring PM2.5 contaminants (the AQI) which will be predictably imprecise for a particular worksite, rendering the rule subject to arbitrary and capricious enforcement.

43.

The 14th Amendment to the United States Constitution prohibits any state from depriving

any person of life, liberty or property, without due process of law.  The provisions of OAR 437-002-1080 and OAR 437-004-9791 are so vague that they do not provide employers, including Plaintiffs' members, with fair notice of what conduct is required or proscribed, and as such are violative of the due process protections of the 14th Amendment to the United States Constitution.

44.

Plaintiffs are entitled to a declaration that OAR 437-002-1080 and 437-004-9791 are unconstitutionally vague and therefore violate the rights of Plaintiffs' members under the 14th Amendment to the United States Constitution.

**Count 2**

**(Lack of Statutory Authority)**

45.

Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-44 above as if fully set forth herein.

46.

Defendant OR-OSHA, under the designated authority of Defendant Stolfi, derives its authority to adopt regulations from the Oregon Safe Employment Act ("OSEA") set forth in ORS Chapter 654 et seq.

47.

The Oregon Legislature adopted the OSEA in 1973 and set forth the purpose of the OSEA in 654.003.  The purpose of the OSEA is "to ensure as far as possible safe and healthful working conditions for every working person in Oregon, to preserve our human resources and to reduce the substantial burden, in terms of lost production, wage loss, medical expenses, disability compensation payments and human suffering, that is created by occupational injury and disease."

Page 11 - COMPLAINT

48.

To accomplish the purpose of the OSEA, the legislature stated it intended to "provide a procedure that would, among other things:

"(3)  Authorize the Director of the Department of Consumer and Business Services and the designees of the director to set reasonable, mandatory, occupational safety and health standards for all employments and places of employment;… and

(6)  Assure that Oregon assumes fullest responsibility, in accord with the federal Occupational Safety and Health Act of 1970 (29 U.S.C. 651 et seq.), for the development, administration and enforcement of safety and health laws and standards."

49.

The OSEA provides the Director of the DCBS and his designees with authority to adopt reasonable regulations to address occupational hazards.

50.

The OSEA does not provide the Director of the DCBS and/or his designees with the authority to regulate general societal hazards which affect employees in and out of the work environment.

51.

OAR 437-002-1080 and OAR 437-004-9791 regulate a hazard of daily life, air pollution tied to PM2.5 contaminants.  These regulations are a significant and unauthorized expansion of OR-OSHA's regulatory authority in that they amount to a general health measure which may fall within the authority of the Oregon Health Authority or the Department of Environmental Quality, but is outside of OR-OSHA's statutory mission.

/ / / /

Page 12 - COMPLAINT

52.

The Oregon Legislature stated overtly its intent that the statutory authority provided in the OSEA would be in accord with the federal Occupational Safety and Health Act of 1970 for the development, administration, and enforcement of safety and health laws and standards.

53.

OAR 437-002-1080 and OAR 437-004-9791 are inconsistent with the Oregon Legislature's stated intent that the OSEA would be administered and enforced in accord with the Federal Occupational Safety and Health Act of 1970, in that those standards regulate a general societal hazard rather than an occupational hazard which, as such, are not authorized by, nor in accord with, the federal OSH Act.

54.

Defendants have exceeded their statutory authority to regulate occupational hazards in adopting OAR 437-002-1080 and OAR 437-004-9791.  The rules are irreconcilably inconsistent with the intent of the Oregon Legislature that the OSEA be administered and enforced in accordance with the Federal Occupational Safety and Health Act of 1970.

55.

Defendants' unauthorized promulgation of OAR 437-002-1080 and 437-004-9791 require Plaintiffs' members to expend resources in an effort to develop exposure plans, implement exposure controls, and train employees on such plans and controls.

56.

Defendant OR-OSHA's anticipated enforcement of the requirements of OAR 437-002-1080 and 437-004-9791 will require employers, including Plaintiffs' members, to expend resources to defend against said enforcement actions despite their improper promulgation with

no available provision in law to allow recovery of those expenses should they prevail.

57.

Plaintiffs are entitled to a declaration that OR-OSHA exceeded its statutory authority in promulgating OAR 437-002-1080 and 437-004-9791.

## **SECOND CLAIM FOR INJUNCTIVE RELIEF**

## **AS TO OAR 437-002-0156 AND OAR 437-004-1131**

### **Count 1**

### **(Violation of Constitutional Due Process)**

58.

Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-57 above as if fully set forth herein.

59.

OAR 437-002-0156 and OAR 437-004-1131 fail to provide employers, including Plaintiffs' members, with a means to determine when the acclimatization plan is required to be triggered on a particular work site, how long such plans must be implemented if the weather changes or what type of employer-specific plan would be considered not in compliance

60.

The lack of any direction in OAR 437-002-0156 and OAR 437-004-1131 as to what triggers implementation of the plan procedures or how long the procedures must be implemented, renders employers, including Plaintiffs' members, unable to definitively determine whether they are in compliance with the rules' requirements.

61.

OAR 437-002-0156 and OAR 437-004-1131 require implementation of acclimatization

procedures without definitive requirements for when such procedures must be implemented on a particular work site, rendering the rule subject to arbitrary and capricious enforcement.

62.

The 14th Amendment to the United States Constitution prohibits any state from depriving any person of life, liberty or property, without due process of law.  The provisions of OAR 437-002-0156 and OAR 437-004-1131 are so vague that they do not provide employers, including Plaintiffs' members, with fair notice of what conduct is required or proscribed, and as such are violative of the due process protections of the 14th Amendment to the United States Constitution.

63.

 Plaintiffs are entitled to a declaration that OAR 437-002-1080 and 437-004-9791 are unconstitutionally vague and therefore violate the rights of Plaintiffs' members under the 14th Amendment to the United States Constitution.

**Count 2**

**(Lack of Statutory Authority)**

64.

Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-63 above as if fully set forth herein.

65.

Defendant OR-OSHA, under the designated authority of Defendant Stolfi, derives its authority to adopt regulations from the Oregon Safe Employment Act ("OSEA") set forth in ORS Chapter 654 et seq.

66.

The Oregon Legislature adopted the OSEA in 1973 and set forth the purpose of the

Page 15 - COMPLAINT

OSEA in 654.003.  The purpose of the OSEA is "to ensure as far as possible safe and healthful working conditions for every working person in Oregon, to preserve our human resources and to reduce the substantial burden, in terms of lost production, wage loss, medical expenses, disability compensation payments and human suffering, that is created by occupational injury and disease."

67.

To accomplish the purpose of the OSEA, the legislature stated it intended to "provide a procedure that would, among other things:

"(3)  Authorize the Director of the Department of Consumer and Business Services and the designees of the director to set reasonable, mandatory, occupational safety and health standards for all employments and places of employment;… and

(6)  Assure that Oregon assumes fullest responsibility, in accord with the federal Occupational Safety and Health Act of 1970 (29 U.S.C. 651 et seq.), for the development, administration and enforcement of safety and health laws and standards."

68.

The OSEA provides the Director of the DCBS and his designees with authority to adopt reasonable regulations to address occupational hazards.

69.

The OSEA does not provide the Director of the DCBS and/or his designees with the authority to regulate general societal hazards which affect employees in and out of the work environment.

70.

OAR 437-002-0156 and OAR 437-004-1131 regulate a hazard of daily life, exposure to apparent temperatures in excess of 80 degrees Fahrenheit.  These regulations are a significant

expansion of OR-OSHA's regulatory authority and amount to a general health measure which may fall within the authority of the Oregon Health Authority.

71.

OAR 437-002-0156 and OAR 437-004-1131 contain provisions which provide: "Except when the heat illness prevention rest breaks coincide with the existing unpaid meal break, the heat illness prevention rest break is a work assignment." By mandating that a heat illness prevention break is a "work assignment," OR-OSHA is regulating employee wages.

72.

The OSEA provides no statutory authority for Defendants to regulate wages in the form of paid rest periods or otherwise. Rather the Oregon Legislature provided statutory authority over regulation of wages to the Bureau of Labor and Industries.

73.

The Oregon Legislature stated that its intent that the statutory authority provided in the OSEA would be in accord with the Federal Occupational Safety and Health Act of 1970 for the development, administration and enforcement of safety and health laws and standards.

74.

OAR 437-002-0156 and OAR 437-004-1131 are inconsistent with the Oregon Legislature's stated intent that the OSEA would be administered and enforced in accord with the Federal Occupational Safety and Health Act of 1970, in that those standards regulate a general societal hazard rather than an occupational hazard which is not authorized by the Federal Act.

75.

Defendants exceed their statutory authority to regulate occupational hazards in adopting OAR 437-002-0156 and OAR 437-004-1131. The rules are further inconsistent with the intent

of the Oregon Legislature that the OSEA be administered and enforced in accordance with the

Federal Occupational Safety and Health Act of 1970.

76.

Defendants' unauthorized promulgation of OAR 437-002-0156 and 437-004-1131

require Plaintiffs' members to expend resources developing heat illness and acclimatization

plans, implementing acclimatization plans and paid break schedules, and training employees on

such plans and controls.

77.

Defendant OR-OSHA's anticipated enforcement of the requirements of OAR 437-002-

1080 and 437-004-9791 will require employers, including Plaintiffs' members, to expend

resources to defend against said enforcement actions despite their improper promulgation with

no available provision in law to recover those expenses should they prevail.

78.

Plaintiffs are entitled to a declaration that OR-OSHA exceeded its statutory authority in

promulgating OAR 437-002-0156 and 437-004-1131.

WHEREFORE, Plaintiffs pray that this Honorable Court:

1.     Enter Judgment in favor of Plaintiffs on each and every Claim for Relief;

2.     Issue a declaration that OAR 437-002-1080 and 437-004-1080 are

       unconstitutionally vague.

3.     Issue a declaration that Defendants exceeded their statutory authority in

       promulgating OAR 437-002-1080, OAR 437-002-0156, OAR 437-004-9791 and

       OAR 437-004-1131;

4.     Issue a temporary restraining order, preliminary injunction, and permanent

injection against Defendants prohibiting enforcement of OAR 437-002-1080,

OAR 437-002-0156, OAR 437-004-9791 and OAR 437-004-1131;

5.      Charge all costs of this action against Defendants;

6.      Award reasonable attorneys' fees to Defendant pursuant to 42 U.S.C. §1983 and

all other basis in law and equity; and

7.      Award such other relief as the Court deems just and proper.

DATED this 15th day of June, 2022.

CUMMINS, GOODMAN,
DENLEY & VICKERS, P.C.


/s/ George W. Goodman
George W. Goodman, OSB #794984
gwg@cumminsgoodman.com
James S. Anderson, OSB #051885
jsa@cumminsgoodman.com
Cummins, Goodman, Denley & Vickers, P.C.
100 S. College Street
Newberg, OR  97132-0609
Telephone:  (503) 476-8200
Of Attorneys for Plaintiffs

Trial Attorney:  George W. Goodman, OSB #79498

Page 19 - COMPLAINT