**Jennifer S. Wagner,** OSB No. 024470
**Lydia Anderson-Dana**, OSB No. 166167
**Elizabeth K. Bailey**, OSB No. 172956
**Madeleine C. Holmes**, OSB No. 193803
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email: jwagner@stollberne.com
          landersondana@stollberne.com
          ebailey@stollberne.com
          mholmes@stollberne.com

*Special Assistant Attorneys General for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **OREGON MANUFACTURERS AND COMMERCE**, an Oregon non-profit association, **ASSOCIATED OREGON LOGGERS, INC.**, an Oregon non-profit association, and **OREGON FOREST & INDUSTRIES COUNCIL**, an Oregon non-profit association,<br><br>                    Plaintiffs,<br><br>          v.<br><br>**OREGON OCCUPATIONAL SAFETY AND HEALTH DIVISION,** a division of the Oregon Department of Consumer and Business Services, **RENEE STAPLETON**, in her official capacity as acting administrator for the Oregon Occupational Safety and Health Division, **OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES**, an Agency of the State of Oregon, and **ANDREW STOLFI**, in his official capacity as the Director of the Oregon Department of Consumer and Business Services,<br><br>                    Defendants. | Case No. 1:22-cv-00875-CL<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>Request for Oral Argument |

## <u>TABLE OF CONTENTS</u>

CERTIFICATION OF COMPLIANCE WITH LR 7-1(A)(1) ....................................................... 1

MOTION ........................................................................................................................................ 1

MEMORANDUM OF LAW .......................................................................................................... 1

    I.     Introduction ........................................................................................................... 1

    II.    Legal Standard ...................................................................................................... 3

    III.   Factual Allegations .............................................................................................. 5

          A.    The Parties ................................................................................................ 5

          B.    The Heat Rules ......................................................................................... 5

          C.    The Smoke Rules ..................................................................................... 8

    IV.   Argument ............................................................................................................ 10

          A.    All Claims Asserted Against DCBS and OR-OSHA Are Barred by
               Sovereign Immunity and the Eleventh Amendment. ................................ 10

          B.    The State Law Claims (Count 2 of the First and Second Claims for
               Relief) Asserted Against Defendants Stapleton and Stolfi Are
               Barred by Sovereign Immunity and the Eleventh Amendment. ............... 11

          C.    Plaintiffs Have Not Stated a Claim that the Heat and Smoke Rules
               at Issue Violate Constitutional Due Process. ........................................... 14

               1.    A facial due process challenge requires Plaintiffs to
                    demonstrate that the rules at issue are unconstitutionally
                    vague in all applications. ............................................................. 14

               2.    Plaintiffs fail to state a claim that the heat rules at issue are
                    unconstitutionally vague. ............................................................. 15

                3.    Plaintiffs fail to state a claim that the smoke rules at issue
                    are unconstitutionally vague. ....................................................... 18

          D.    All Claims Relating to OAR 437-002-1080 Must Be Dismissed, as
               No Such Rule Exists. ............................................................................... 20

    V.    Conclusion .......................................................................................................... 21

Page i -    **MOTION TO DISMISS**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alden v. Maine,*
  527 U.S. 706 (1999) ............................................................................................ 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................................. 4

*Bartholomew v. Pearce,*
  131 Or. App. 658 (1994) ...................................................................................... 13

*Cameron v. Johnson,*
  390 U.S. 611 (1968) ............................................................................................. 15

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
  598 F.3d 1115 (9th Cir. 2010) ............................................................................... 3

*City of Lakewood v. Plain Dealer Pub. Co.,*
  486 U.S. 750 (1988) ............................................................................................. 16

*Coal. to Defend Affirmative Action v. Brown,*
  674 F.3d 1128 (9th Cir. 2012) ............................................................................... 5

*Coats v. Oregon,*
  334 Or. 587 (2002) ............................................................................................... 13

*Delong Corp. v. Or. State Highway Comm'n,*
  343 F.2d 911 (9th Cir. 1965) ............................................................................... 11

*Dugan v. Rank,*
  372 U.S. 609 (1963) ............................................................................................. 12

*Durning v. First Boston Corp.,*
  815 F.2d 1265 (9th Cir. 1987) ............................................................................... 4

*Ex parte Young,*
  209 U.S. 123 (1908) ....................................................................................... 12, 13

*Galbraith v. Cnty. of Santa Clara,*
  307 F.3d 1119 (9th Cir. 2002) ............................................................................... 4

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ............................................................................................. 15

*Green v. Mansour,*
  474 U.S. 64 (1985) ............................................................................................... 12

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

*Hale v. Arizona,*
   967 F.2d 1356 (9th Cir. 1992),
   *on reh'g*, 993 F.2d 1387 (9th Cir. 1993) ................................................................ 12

*Hawaii v. Gordon,*
   373 U.S. 57 (1963) .......................................................................................... 12

*IDK, Inc. v. Clark Cnty.,*
   836 F.2d 1185 (9th Cir. 1988) ............................................................................ 14

*Lee v. City of L.A.,*
   250 F.3d 668 (9th Cir. 2001) .............................................................................. 4

*Monarch Content Mgt. LLC v. Arizona Dep't of Gaming,*
   971 F.3d 1021 (9th Cir. 2020) ............................................................................ 14

*Nickerson v. Portland Police Bureau,*
   2008 WL 4449874 (D. Or. Sept. 30, 2008) ...................................................... 15, 17

*NRDC v. Calif. Dept. of Transp.,*
   96 F.3d 420 (9th Cir. 1996) ................................................................................ 12

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) ............................................................................ 10, 11, 12, 13

*Sato v. Orange Cnty. Dep't of Educ.,*
   861 F.3d 923 (9th Cir. 2017) .......................................................................... 4, 11

*Seminole Tribe of Fla. v. Florida,*
   517 U.S. 44 (1996) ............................................................................................ 11

*Stanley v. Trustees of Cal. State Univ.,*
   433 F.3d 1129 (9th Cir. 2006) ...................................................................... 10, 13

*Sun Savings & Loan Ass'n v. Dierdorff,*
   825 F.2d 187 (9th Cir. 1987) .............................................................................. 4

*Todd v. Oregon,*
   2014 WL 1217964 (D. Or. Mar. 19, 2014) .......................................................... 11

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) .............................................................................. 4

*United States v. Salerno,*
   481 U.S. 739 (1987) .......................................................................................... 15

*Valhalla Custom Homes, LLC v. City of Portland,*
   2021 WL 8156024, (D. Or. Sept. 17, 2021), *findings and recommendation adopted*, 2022 WL
   796012 (D. Or. Mar. 16, 2022) .......................................................................... 15

Page iii -   **MOTION TO DISMISS**

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
     455 U.S. 489 (1982) ............................................................... 14, 15, 17, 19

**Statutes**

Or. Rev. Stat. § 174.040 .................................................................... 16

Or. Rev. Stat. § 183.400 .................................................................... 13

**Other Authorities**

Executive Order 20-04 ........................................................................ 2

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(1) ................................................................. 1, 3, 4

Fed. R. Civ. P. 12(b)(6) ................................................................... 1, 4

Fed. R. Civ. P. 12(h)(3) ..................................................................... 4

**Oregon Rules**

Or. Admin. R. 437-001-0135 ............................................................. 14

Or. Admin. R. 437-001-0203 ............................................................. 14

Or. Admin. R. 437-002-0156 ....................................................... passim

Or. Admin. R. 437-002-1081 ....................................................... passim

Or. Admin. R. 437-004-1131 ....................................................... passim

Or. Admin. R. 437-004-9791 ....................................................... passim

Page iv -   **MOTION TO DISMISS**

## CERTIFICATION OF COMPLIANCE WITH LR 7-1(A)(1)

Counsel for Defendants certify that on August 29, 2022, counsel for the parties conferred by telephone and made a good-faith effort to resolve the disputes raised in this motion. Despite the parties' good-faith efforts, the parties have been unable to resolve the disputes.

## MOTION

Pursuant to Federal Rule of Civil Procedure ("Rule" or "Fed. R. Civ. P.") 12(b)(1) and/or 12(b)(6), Defendants move to dismiss all claims (both state and federal) asserted against Defendant Oregon Occupational Safety and Health Division ("OR-OSHA") and Defendant Oregon Department of Consumer and Business Services ("DCBS"), and the state law claims (Count 2 of the First and Second Claims For Relief) asserted against Defendant Andrew Stolfi and Defendant Renée Stapleton, because the claims are barred by the doctrine of sovereign immunity and the Eleventh Amendment of the Constitution of the United States.

Pursuant to Rule 12(b)(6), Defendants move to dismiss Plaintiffs' due process claims (Count 1 of the First and Second Claims for Relief) for failure to state a claim.

Pursuant to Rule 12(b)(6), Defendants move to dismiss all claims relating to OAR 437-002-1080 for failure to state a claim, on the ground that no such rule exists.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

To address the serious and potentially fatal effects of workplace exposure to heat and smoke becoming all too common in Oregon, Defendant OR-OSHA adopted common sense administrative rules to protect Oregon workers from exposure to excessive ambient heat temperatures and hazardous levels of wildfire smoke while at work. *See* OAR 437-002-0156 and

Page 1 - **MOTION TO DISMISS**

437-004-1131 (the "heat rules"), OAR 437-002-1081[1] and OAR 437-004-9791 (the "smoke

rules") (collectively, "the heat and smoke rules").  Plaintiffs Oregon Manufacturers and

Commerce, Associated Oregon Loggers, Inc., and Oregon Forest & Industries Council

(collectively, "Plaintiffs") are trade associations that seek to invalidate the heat and smoke rules.

The heat and smoke rules arise from Executive Order 20-04 ("EO-20-04"), issued on

March 10, 2020, in which Governor Kate Brown directed certain state agencies to address and

mitigate the impacts of climate change in various ways.  Dkt. 1-1 ("Compl., Ex. 1") at 1, 4; Dkt.

1-2 ("Compl., Ex. 2") at 1, 4-5.  As relevant here, EO-20-04 directed OR-OSHA to work with

the Oregon Health Authority ("OHA") "to jointly develop a proposal for standards to protect

employees from workplace exposures to excessive heat and wildfire smoke."  Compl., Ex. 1 at 1,

4; *see also* Compl., Ex. 2 at 1, 4-5.  OR-OSHA collaborated with OHA, rulemaking advisory

committees, and stakeholders to develop the heat and smoke rules at issue, which are

increasingly vital to the protection of Oregon workers.  Compl., Ex. 1 at 1, 4-5; Compl., Ex. 2 at

1, 4-5.

Against this backdrop, Plaintiffs assert two claims for relief against Defendants OR-

OSHA, Renée Stapleton (in her official capacity as Acting Administrator for OR-OSHA),

DCBS, and Andrew Stolfi (in his official capacity as the Director of the Oregon DCBS), alleging

the heat and smoke rules are unconstitutionally vague under the federal constitution, and further

---

[1] Throughout the Complaint, Plaintiffs cite to "OAR 437-002-1080" when referencing the smoke rules.  *See, e.g.*, Dkt. 1, Complaint ("Complaint" or "Compl.") ¶¶ 22, 24-28, 40-44, 51, 53-57.  Further, Plaintiffs' First Claim for Relief specifically seeks to invalidate "OAR 437-002-1080."  Compl. ¶¶ 39-57.  However, OR-OSHA adopted the final smoke rules as OAR 437-002-1081.  *See* Dkt. 1-2 ("Compl., Ex. 2") at 1.  Defendants separately move to dismiss Plaintiffs' claims to the extent they are based on non-existent "OAR 437-002-1080."  *See infra*, Section IV.D.  Nonetheless, Defendants address the text and substance of OAR 437-002-1081 herein.

Page 2 -   **MOTION TO DISMISS**

that Defendants exceeded their state statutory authority in adopting the heat and smoke rules. Plaintiffs' claims fail for multiple reasons.

All claims (both state and federal) asserted against OR-OSHA and DCBS are barred because the doctrine of sovereign immunity and the Eleventh Amendment provide the State of Oregon with immunity from suit in federal court. Plaintiffs' state law claims against Defendants Stapleton and Stolfi are similarly barred by the doctrine of sovereign immunity and the Eleventh Amendment, because the *Ex parte Young* exception permitting certain official capacity suits against state officials does not apply to state law claims.

Further, the federal due process claims asserted against all Defendants must be dismissed. Plaintiffs' allegations are insufficient to state a due process claim based on the assertion that the rules at issue are impermissibly vague. In order to succeed on their pre-enforcement facial due process challenge, Plaintiffs must demonstrate that the rules at issue are impermissibly vague in all applications. As discussed below, the rules at issue are not impermissibly vague in any, let alone all, applications.

Finally, Plaintiffs' claims must be dismissed to the extent they are based on non-existent "OAR 437-002-1080."

In sum, Defendants request that the Court dismiss Plaintiffs' Complaint in its entirety.

## II.    LEGAL STANDARD

Under Rule 12(b)(1), a defendant may move to dismiss a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citation omitted). A defendant may raise the issue of sovereign immunity through a motion to dismiss under Rule 12(b)(1). *See Sato v. Orange Cnty. Dep't of*

Page 3 -    **MOTION TO DISMISS**

*Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion."). When a defendant correctly identifies a jurisdictional defect, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

On a motion to dismiss for failure to state a claim under 12(b)(6), courts presume the truth of allegations in the complaint, and construe them in the light most favorable to the nonmoving party. Fed. R. Civ. P. 12(b)(6); *Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987). However, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is plausible on its face only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When ruling on a motion to dismiss under Rule 12(b)(6), a court may "consider certain materials," including "documents attached to the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *see also Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) (same); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. . . . These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.") (citation omitted).

Page 4 -   **MOTION TO DISMISS**

Ninth Circuit law requires that the Court decide the sovereign immunity issues as a threshold question before reaching the merits of the case. *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012).

## III.    FACTUAL ALLEGATIONS

### A.    The Parties

Plaintiffs are three Oregon trade associations purporting to represent their respective member companies which are alleged to be engaged in Oregon manufacturing and commerce, and the harvest, protection, and management of forests.  Dkt. 1, Complaint ("Complaint" or "Compl.") ¶¶ 1-3.

Defendant DCBS is an agency of the State of Oregon, and Defendant OR-OSHA is a division of DCBS.  *Id.* ¶¶ 4, 6.  Defendant Stolfi is the Director of DCBS, and Defendant Stapleton is the Acting Administrator of OR-OSHA.  *Id.* ¶¶ 5, 7.

### B.    The Heat Rules

OR-OSHA initiated the rulemaking process for the heat rules in March 2021 in collaboration with OHA, a rulemaking advisory committee, and stakeholders representing labor and business interests.  Compl., Ex. 1 at 1.  In June of 2021, because of the "unprecedented heat event" at the time, and with the formal rulemaking process underway, OR-OSHA adopted a temporary version of the heat rules.  *Id.* at 1-2.  On May 9, 2022, OR-OSHA adopted the final heat rules, with an effective date of June 15, 2022.  Compl. ¶¶ 29-30; Compl., Ex. 1 at 4.[2]  In

---

[2] OR-OSHA adopted two sets of heat rules: OAR 437-002-0156 and OAR 437-004-1131. Compl. ¶ 31; *see also e.g.*, Compl., Ex. 1 at 1.  As Plaintiffs allege, the text of the two sets of heat rules is "identical in relevant manner for purposes of [Plaintiffs'] complaint."  *See* Compl. ¶ 31.  OAR 437-002-0156 "applies to general industry," and OAR 437-004-1131 "applies to places of employment subject to the rules for agriculture."  *Id.*

Page 5 -    **MOTION TO DISMISS**

adopting the rules, OR-OSHA sought to address the problem that "both employers and workers may not clearly understand expectations of what must be done to prevent work-related heat illness." Compl., Ex. 1 at 1. Indeed, "[t]he deadly heat wave of June 2021, which contributed to multiple workplace hospitalizations and fatalities, underscored the need for such rules to protect workers against the serious risk of work-related heat illness." *Id.*

The heat rules apply "whenever an employee performs work activities, whether in indoor or outdoor environments, where the heat index (apparent temperature) equals or exceeds 80 degrees Fahrenheit." Compl. ¶ 33; Compl., Ex. 1 at 8 (OAR 437-002-0156(1)); *id.* at 31 (OAR 437-004-1131(1)). The rules provide limited exemptions for certain workplaces and/or types of work. Compl., Ex. 1 at 8 (OAR 437-002-0156(1)(a) & (b)); *id.* at 31 (OAR 437-004-1131(1)(a) & (b)). The heat rules include several provisions that address worker exposure to high ambient heat temperatures, including drinking water and shade requirements, high-heat practices, emergency medical plans, acclimatization plans, heat illness prevention plans, supervisor and employee training, and training documentation. *See* Compl., Ex. 1 at 9-12 (OAR 437-002-0156(3)-(10)), 31-34 (OAR 437-004-1131(3)-(10)).[3]

Plaintiffs' due process challenge against the heat rules relates to the provision requiring employers to develop and implement a written "acclimatization plan." Compl. ¶ 37; *see also* Compl., Ex. 1 at 11 (OAR 437-002-0156(7)); *id.* at 33 (OAR 437-004-1131(7)).

---

[3] *See* Compl., Ex. 1 at 9-12, 31-34 (shade (OAR 437-002-0156(3), OAR 437-004-1131 (3)); drinking water (OAR 437-002-0156(4), OAR 437-004-1131(4)); high-heat practices (OAR 437-002-0156(5), OAR 437-004-1131(5)); emergency medical plans (OAR 437-002-0156(6), OAR 437-004-1131(6)); acclimatization plans (OAR 437-002-0156(7), OAR 437-004-1131(7)); heat illness prevention plans (OAR 437-002-0156(8), OAR 437-004-1131(8)); supervisor and employee training (OAR 437-002-0156(9), OAR 437-004-1131(9)); training documentation (OAR 437-002-0156(10), OAR 437-004-1131(10))).

Page 6 -   **MOTION TO DISMISS**

"[A]cclimatization" is the "temporary adaptation of the body to work in the heat that occurs gradually when a person is exposed to it." Compl., Ex. 1 at 9 (OAR 437-002-0156(2)(a)); *id.* at 31 (OAR 437-004-1131(2)(a)). The relevant portion of the heat rules provides:

> (7) Acclimatization plan. Develop and implement an acclimatization plan and procedures in writing. Employers must choose between two options, either (a) or (b) as described below, and implement the chosen plan.
>
> (a) Employer-designed acclimatization plan option: Employers who develop their own acclimatization plan must integrate and implement the following factors into their program:
>
> (A) Acclimated and unacclimated workers;
>
> (B) The effects of clothing and personal protective equipment on adding to the heat burden of workers;
>
> (C) The personal and environmental risk factors that put workers at a higher risk of heat-related illness;
>
> (D) Re-acclimatizing workers as necessary, either due to changes in the weather or a worker spending more than seven days away from the job; and
>
> (E) The use and maintenance of auxiliary cooling systems such as water-cooled garments, air-cooled garments, cooling vests, and wetted overgarments.
>
> (b) [National Institute for Occupational Safety and Health ("NIOSH")] acclimatization plan option: Employers that choose not to develop their own acclimatization plan must follow the acclimatization plan developed by the Centers for Disease Control and Prevention and NIOSH; *see* section 4, Appendix A: Mandatory Information for Heat Illness Prevention.

Compl., Ex. 1 at 11 (OAR 437-002-0156(7)); *id.* at 33 (OAR 437-004-1131(7)).

Thus, the acclimatization plan provision of the heat rules provides employers with the option to design their own plan, integrating the factors enumerated in the rules, or adopt a plan drafted by NIOSH. *See* Compl., Ex. 1 at 11 (OAR 437-002-0156(7)); *id.* at 33 (OAR 437-004-1131(7)). A full copy of the NIOSH plan is attached to the Complaint and appended to the heat rules. Compl., Ex. 1 at 18-19, 40-41. The NIOSH plan requires that employers allow employees

Page 7 - **MOTION TO DISMISS**

to acclimatize over a period of 7 to 14 days, with the duration of work in the hot environment gradually increasing during that time period. *Id.* at 18, 40. "For new workers, the schedule should be no more than 20% of the usual duration of the work in the hot environment on day 1 and a no more than 20% increase on each additional day." *Id*. at 18, 40. The NIOSH plan goes on to provide that, "[f]or workers who have had previous experience with the job, the acclimatization regimen should be no more than 50% of the usual duration of work in the hot environment on day 1, 60% on day 2, 80% on day 3 and 100% on day 4." *Id.* at 18, 40.

### C.    The Smoke Rules

OR-OSHA began the rulemaking process for the smoke rules in March of 2021 in collaboration with OHA, a rulemaking advisory committee, and stakeholders. Compl, Ex. 2 at 1-2. In August 2021, OR-OSHA adopted a temporary version of the smoke rules "[d]ue to the immediate risk of worker exposure to wildfire smoke during the later portion of Oregon's 2021 wildfire season . . ." *Id.* at 2. On May 10, 2022, OR-OSHA adopted the final smoke rules, with an effective date of July 1, 2022. Compl. ¶¶ 18-19; *see also* Compl., Ex. 2 at 4.[4] OR-OSHA adopted the rules "to address worker exposure to unhealthy and hazardous levels of the primary air contaminant of concern in wildfire smoke, fine particulate matter (PM2.5)." Compl., Ex. 2 at 4. In adopting the final smoke rules, OR-OSHA remarked that Oregon's air quality in 2020 was the worst on record, and a report by the Oregon Department of Environmental Quality commented that wildfires are expected to become more frequent. *Id.*

---

[4] OR-OSHA adopted two sets of smoke rules: OAR 437-004-9791 and OAR 437-002-1081. Compl. ¶ 18; *see also, e.g.*, Compl., Ex. 2 at 1. As Plaintiffs allege, the two sets of smoke rules are "identical in relevant manner for purposes of [Plaintiffs'] complaint." *See* Compl. ¶ 20. OAR 437-002-1081 applies "to general industry," and OAR 437-004-9791 applies "to places of employment subject to the rules for agriculture." *Id.*

Page 8 -    **MOTION TO DISMISS**

The smoke rules apply when workers "are or will be exposed to wildfire smoke where the ambient air concentration for fine particulate matter (PM2.5) is at or above 35.5 μg/m3 (Air Quality Index [("AQI")] value of 101 for PM2.5)." Compl. ¶ 22; *see also* Compl., Ex. 2 at 8 (OAR 437-002-1081(1)); *id.* at 17 (OAR 437-004-9791(1)). The rules also define the AQI as an "indicator," developed by the U.S. Environmental Protection Agency ("EPA"), "of overall air quality . . . based on the five criteria pollutants regulated under the Clean Air Act." Compl. ¶ 25; Compl., Ex. 2 at 9 (OAR 437-002-1081 (2)(a)); *id.* at 17 (OAR 437-004-9791(2)(a)). The rules provide limited exemptions for certain workplaces and/or types of work. Compl., Ex. 2 at 8-9 (OAR 437-002-1081 (1)(a)); *id.* at 17 (OAR 437-004-9791(1)(a)). The smoke rules include requirements relating to exposure assessments, training and documentation, two-way communication with employees, and implementation of exposure control (e.g., use of respirators under certain conditions).[5]

As relevant to Plaintiffs' claim that the smoke rules are unconstitutionally vague, the rules require employers to "[m]onitor employee exposure to wildfire smoke when employees are, or are likely to be, exposed to an ambient air concentration for PM2.5 at or above 35.5 μg/m3 (AQI 101)." Compl., Ex. 2 at 9 (OAR 437-002-1081(3)); *id.* at 18 (OAR 437-004-9791(3)). The monitoring "must be performed at the start of each shift" and as needed to comply with provisions of the smoke rules. Compl., Ex. 2 at 9 (OAR 437-002-1081(3)); *id.* at 18 (OAR 437-

---

[5] *See* Compl., Ex. 2 at 9-12, 18-20 (exposure assessments (OAR 437-002-1081(3), OAR 437-004-9791(3)); training and documentation (OAR 437-002-1081(4)-(5), OAR 437-004-9791(4)-(5)); two-way communication with employees (OAR 437-002-1081(6), OAR 437-004-9791(6)); implementation of exposure control (OAR 437-002-1081(7), OAR 437-004-9791(7))).

Page 9 - **MOTION TO DISMISS**

004-9791(3)).  The rules provide that employers can comply with the requirements to monitor air

quality for PM2.5 levels "by using one or more of the following methods":

> (a) Check the current average and forecasted AQI value for PM2.5 from the Oregon Department of Environmental Quality, U.S. EPA AirNow or Interagency Wildland Fire Air Quality Response Program websites, or equivalent source;
>
> (b) Check notifications of air quality advisories due to wildfire smoke issued by the Oregon Department of Environmental Quality or local government health agencies;
>
> (c) Directly measure workplace ambient air concentration for PM2.5 in accordance with the testing device manufacturer's user instructions; or
>
> (d) If the employer determines and can demonstrate that none of the methods in subsections (3)(a) through (3)(c) of this standard are available for their work location, the employer can then use the 5-3-1 Visibility Index provided in Appendix B, Table 1 of this standard to estimate the current air concentration for PM2.5, and equivalent AQI value, during daylight hours.

Compl., Ex. 2 at 9 (OAR 437-002-1081(3)); *id.* at 18 (OAR 437-004-9791(3)); *see also* Compl.

¶ 27.

## IV.    ARGUMENT

### A.    All Claims Asserted Against DCBS and OR-OSHA Are Barred by Sovereign Immunity and the Eleventh Amendment.

Plaintiffs assert claims regarding the heat and smoke rules against DCBS, an agency of

the State of Oregon, and OR-OSHA, a division of that agency.  Compl. ¶¶ 4 & 6.  Under the

doctrine of sovereign immunity, a nonconsenting state and its agencies or departments are

immune from suit in federal court, regardless of the relief sought.  *Pennhurst State Sch. & Hosp.

v. Halderman*, 465 U.S. 89, 100 (1984).[6]  The Supreme Court has held that the Eleventh

Amendment bars suits brought by citizens against their own states.  *Id.* at 98.  The Supreme

---

[6] As the Ninth Circuit has explained, "Courts have often 'referred to the States' immunity from suit as 'Eleventh Amendment immunity.'  The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment.'"  *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006) (quoting *Alden v. Maine,* 527 U.S. 706, 713 (1999)).

Page 10 -  **MOTION TO DISMISS**

Court further has interpreted the Eleventh Amendment's protection as extending to suits invoking federal question jurisdiction. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996). Although a state may waive its sovereign immunity by consenting to suit in federal court, the waiver must "be unequivocally expressed." *Pennhurst*, 465 U.S. at 99.

Plaintiffs have sued DCBS, a state agency, and OR-OSHA, a division of that state agency. Compl. ¶¶ 4 & 6. Oregon has not consented to suit in federal court, and Plaintiffs make no contrary allegation in the Complaint. *See Delong Corp. v. Or. State Highway Comm'n*, 343 F.2d 911, 912 (9th Cir. 1965) (holding "that Oregon has not consented to be sued in federal court or otherwise waived its immunity under the Eleventh Amendment"); *Todd v. Oregon*, 2014 WL 1217964, at *4 (D. Or. Mar. 19, 2014) (concluding that the State had not waived sovereign immunity for federal constitutional claims).

Accordingly, DCBS and OR-OSHA must be dismissed from this action under Rule 12(b)(1) and/or 12(b)(6). *Sato*, 861 F.3d at 927.[7]

**B.      The State Law Claims (Count 2 of the First and Second Claims for Relief) Asserted Against Defendants Stapleton and Stolfi Are Barred by Sovereign Immunity and the Eleventh Amendment.**

Plaintiffs assert claims against Defendant Stapleton in her official capacity as the Acting Administrator of OR-OSHA. Plaintiffs likewise bring claims against Defendant Stolfi in his official capacity as Director of DCBS. Plaintiffs seek injunctive relief barring Defendants Stapleton and Stolfi from enforcing the Oregon Administrative Rules at issue. Compl. ¶ 78.

---

[7] DCBS and OR-OSHA also are not "persons" for purposes of claims arising under 42 U.S.C. §§ 1983 & 1988. *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004) (holding states and state agencies are not "persons" within the meaning of § 1983). Therefore, Count 1 of the First and Second Claims for Relief must also be dismissed against DCBS and OR-OSHA to the extent they arise under 42 U.S.C. §§ 1983 & 1988.

Page 11 -  **MOTION TO DISMISS**

Plaintiffs' claims against Defendants Stapleton and Stolfi include state law claims that are barred by the doctrine of sovereign immunity and the Eleventh Amendment.

Sovereign immunity extends to state officers who act on behalf of the state. *NRDC v. Calif. Dept. of Transp.*, 96 F.3d 420, 422 (9th Cir. 1996). Sovereign immunity and the Eleventh Amendment bar suits against state officials when the state is the real party in interest. *Pennhurst* 465 U.S. at 101-02. "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id*. at 101 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). Suits against state officials are suits against the state where the relief sought would "interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting. . . ." *Id.* at 101 n. 11 (quoting *Dugan v. Ran*k, 372 U.S. 609, 620 (1963) (internal citations omitted)).

*Ex parte Young*, 209 U.S. 123 (1908), provides a limited exception to the general rule barring official capacity suits against state officials. *Pennhurst,* 465 U.S. at 102. Under this exception, a state official may be sued in federal court in her official capacity if the relief sought is "prospective injunctive relief to prevent a continuing violation of *federal* law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (emphasis added). This exception is premised on the proposition that federal court authority to enjoin a "continuing violation of federal law [is] necessary to vindicate the federal interest in assuring the supremacy of that law." *Id*.

However, the *Ex parte Young* exception is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst*, 465 U.S. at 106; *see also Hale v. Arizona*, 967 F.2d 1356, 1369 (9th Cir. 1992), *on reh'g*, 993 F.2d 1387 (9th Cir. 1993) ("the Eleventh Amendment deprives federal courts of jurisdiction to order state actors to comply with state law"). This is because "[a] federal court's grant of relief against state officials on the basis of state law . . . does

Page 12 -  **MOTION TO DISMISS**

not vindicate the supreme authority of federal law." *Pennhurst*, 465 U.S. at 106.  As the

Supreme Court acknowledged in *Pennhurst*, "it is difficult to think of a greater intrusion on state

sovereignty than when a federal court instructs state officials on how to conform their conduct to

state law. Such a result conflicts directly with the principles of federalism that underlie the

Eleventh Amendment." *Id.*  The Court further held that "neither pendent jurisdiction nor any

other basis of jurisdiction may override the Eleventh Amendment." *Id.* at 121; *see also Stanley

v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133-34 (9th Cir. 2006) (holding that "28 U.S.C.

§ 1367 does not abrogate state sovereign immunity for supplemental state law claims").

In Count 2 of the First and Second Claims for Relief, Plaintiffs assert that OR-OSHA

exceeded its statutory authority under state law in promulgating the heat and smoke rules at

issue*,* and, on that basis, seek to enjoin Defendants Stapleton and Stolfi from enforcing those

rules.  Compl. ¶¶ 46 & 65 (alleging that OR-OSHA "derives its authority to adopt regulations

from the Oregon Safe Employment Act ('OSEA') set forth in ORS Chapter 654 et seq."); ¶¶ 50

& 69 (alleging that OSEA does not provide authority to regulate "general societal hazards").

Because Count 2 of each claim for relief arises under state law, any alleged *Ex parte Young*

exception is inapplicable.

The state law claims (Count 2 of the First and Second Claims for relief) against

Defendant Stapleton and Defendant Stolfi are barred by sovereign immunity and the Eleventh

Amendment, and must be dismissed under Rule 12(b)(1) and/or 12(b)(6).[8]

---

[8] For the reasons stated in Sections IV.A & B, Plaintiffs' state law claims that OR-OSHA
lacks authority to promulgate these rules must be dismissed as a result of the State's sovereign
immunity.  In addition, Plaintiffs overlook that the Oregon Administrative Procedures Act
("APA") "provides that the validity of an agency rule" is an issue properly raised in the Oregon
Court of Appeals.  *Coats v. Oregon*, 334 Or. 587, 595 (2002) (citing ORS 183.400(1)); *see also
Bartholomew v. Pearce*, 131 Or. App. 658, 660-61 (1994) (holding that because plaintiff
challenged "the validity of administrative rules," review under the APA "is exclusive").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

C.    **Plaintiffs Have Not Stated a Claim that the Heat and Smoke Rules at Issue Violate Constitutional Due Process.**

1.    **A facial due process challenge requires Plaintiffs to demonstrate that the rules at issue are unconstitutionally vague in all applications.**

If a party challenges a rule as unduly vague in violation of due process, and the rule targets activity that falls outside of the First Amendment, the challenger "must demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982); *see also Monarch Content Mgt. LLC v. Arizona Dep't of Gaming*, 971 F.3d 1021, 1030 (9th Cir. 2020). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Estates*, 455 U.S. at 498. Thus, business regulations, particularly those that involve only civil penalties (such as those here), are subject to a less strict vagueness test. *Id.*; *see also* OAR 437-001-0135 through OAR 437-001-0203 (rules detailing OR-OSHA's civil penalties). This is so in part because a business enterprise has "the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process," *Vill. of Hoffman Estates*, 455 U.S. at 498, as is the case here. In this situation, where at least "some sufficiently definite applications are plainly possible, [the Court] need not consider the plaintiffs' hypotheticals about future enforcement." *Monarch Content Mgt.*, 971 F.3d at 1031 (citations omitted); *see also IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1198 (9th Cir. 1988) (citations omitted) ("The absence of a significant first amendment interest is . . . fatal to a facial challenge of a business regulation for vagueness unless the

---

Defendants reserve all arguments on the merits of this issue and are fully prepared to defend OR-OSHA's authority to enact these rules to the extent the issues are raised in the proper forum.

Page 14 -  **MOTION TO DISMISS**

regulation is vague in all possible applications."); *Nickerson v. Portland Police Bureau*, 2008 WL 4449874, at \*4–5 (D. Or. Sept. 30, 2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) ("'[t]he challenger must establish that no set of circumstances exists under which the [rule] would be valid'").

To defeat a facial vagueness challenge, the rule at issue is only required to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." *Vill. of Hoffman Estates*, 455 U.S. at 498 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)); *see also Nickerson*, 2008 WL 4449874, at \*5 (a rule is not unconstitutionally vague if "[o]rdinary people can understand its meaning" and what it "requires"); *Valhalla Custom Homes, LLC v. City of Portland,* No. 3:21-CV-00225-JR, 2021 WL 8156024, at \*4 (D. Or. Sept. 17, 2021) (citing *Cameron v. Johnson*, 390 U.S. 611, 616 (1968)) (same), *findings and recommendation adopted*, No. 3:21-CV-00225-JR, 2022 WL 796012 (D. Or. Mar. 16, 2022).

### 2. Plaintiffs fail to state a claim that the heat rules at issue are unconstitutionally vague.

Plaintiffs have not, and cannot, sufficiently plead that the heat rules are unconstitutionally vague. The rules at issue regulate business conduct, not constitutionally protected conduct. Therefore, Plaintiffs must demonstrate the rules are unconstitutionally vague in all applications to prevail. *Vill. of Hoffman Estates*, 455 U.S. at 497. Plaintiffs' allegations do not support a claim that the heat rules are unconstitutionally vague in *any*, let alone all, applications.

As an initial matter, Plaintiffs seek to invalidate the heat rules in their entirety. *See* Compl. ¶¶ 62-63. The heat rules contain many provisions, including those relating to access to shade, drinking water, training, high heat practices, emergency medical plans, and acclimatization. *See* Compl., Ex. 1 at 9-12 (OAR 437-002-0156(3)-(10)), 31-34 (OAR 437-004-

Page 15 - **MOTION TO DISMISS**

1131(3)-(10)).  Plaintiffs' Complaint, however, alleges only that a single part of the rule—the provision on acclimatization plans—is vague.  *E.g.*, Compl. ¶¶ 59-61; *see also id.* at ¶¶ 37-38. Plaintiffs' claim fails on this ground alone, because Plaintiffs do not even attempt to allege the heat rule is vague in the vast majority of applications, such as those relating to the enforcement of the provisions applying to shade, drinking water, or emergency medical plans.  Accordingly, Plaintiffs' vagueness claim must be dismissed.[9]

Further, Plaintiffs cannot support their vagueness challenge even as to the narrow portion of the rules they attack—the provision relating to acclimatization plans.  Plaintiffs assert the acclimatization plan rules are unconstitutionally vague on their face because they do not provide requirements for: (1) "exactly when such plans are triggered," (2) "how long such plans must be implemented if the weather changes," or (3) "what type of employer-specific plan would be considered not in compliance."  Compl. ¶ 38 (emphasis added); *see also id.* ¶ 59.

As to Plaintiffs' first contention, the rules plainly state that the acclimatization provision is triggered "whenever an employee performs work activities, whether in indoor or outdoor environments, where the heat index (apparent temperature) equals or exceeds 80 degrees Fahrenheit."  *See* Compl., Ex. 1 at 8 (OAR 437-002-0156(1)), 31 (OAR 437-004-1131(1)). *Contra* Compl. ¶¶ 38, 60.  In fact, Plaintiffs' Complaint acknowledges this as the trigger for the

---

[9] Oregon law provides that, should any provision of a rule be held unconstitutional, the "remaining parts shall remain in force unless" (1) the text provides otherwise, (2) the remaining parts "are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part," or (3) the remaining parts standing alone "are incomplete and incapable of being executed in accordance with the legislative intent."  ORS 174.040.  *See also City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772 (1988) ("Severability of a local ordinance is a question of state law. . . .").

Page 16 -  **MOTION TO DISMISS**

heat rules.  Compl. ¶ 33.[10]  Clearly the rules permit people of ordinary intelligence an

opportunity to understand when they apply.  *Vill. of Hoffman Estates*, 455 U.S. at 498;

*Nickerson*, 2008 WL 4449874, at *5.

Regarding Plaintiffs' assertion that the acclimatization plan rule fails to state how long

such plans must be in place if the weather changes, the rule is clear that the plan must be

activated during the time when the heat index is at or over 80 degrees.  *See* Compl., Ex. 1 at 8

(OAR 437-002-0156(1)), 31 (OAR 437-004-1131(1)); *supra* n. 10.  *See also* Compl., Ex. 1 at 11

(OAR 437-002-0156(7)), 33 (OAR 437-004-1131(7)) (acclimatization plan requirements).

With respect to Plaintiffs' claim that the rules do not specify "what type of employer-

specific plan would be considered not in compliance," the rules affirm that employer-designed

plans must "integrate and implement" five enumerated factors.  Compl., Ex. 1 at 11 (OAR 437-

002-0156(7)(a)); *id.* at 33 (OAR 437-004-1131(7)(a)).  Alternatively, the rule provides

essentially a safe harbor for employers who simply want to adopt the NIOSH acclimatization

plan, the terms of which are specifically outlined in the attachments to the rule.  *See* Compl., Ex.

1 at 11 (OAR 437-002-0156(7)(b)); *id.* at 33 (OAR 437-004-1131(7)(b)); *see also id.* at 18-19,

40-41 (NIOSH criteria for acclimatization).  On this basis, the acclimatization provision gives

sufficiently "fair notice" of what the rules require.  *Vill. of Hoffman Estates*, 455 U.S. at 498.

The heat rules are not vague in any, let alone all, applications.  Plaintiffs' due process

claim seeking to invalidate the heat rules must be dismissed.

---

[10] "The Scope and Application sections of both OAR 437-002-0156 and OAR 437-004-1131 are identical and provide in part that the standard apply [sic]: 'whenever an employee performs work activities, whether in indoor or outdoor environments, where the heat index (apparent temperature) equals or exceeds 80 degrees Fahrenheit.'"  Compl. ¶ 33.

Page 17 -  **MOTION TO DISMISS**

3.     **Plaintiffs fail to state a claim that the smoke rules at issue are unconstitutionally vague.**

Plaintiffs allege the smoke rules are unconstitutionally vague on the basis that they (1) fail to provide employers with a means to determine if wildfire smoke is contributing to the PM2.5 contaminants at a work site, (2) provide inconsistent requirements for measuring the PM2.5 levels at a work site, and (3) require use of the AQI, which they maintain is "predictably imprecise." Compl. ¶¶ 28, 40-42.

There is no merit to Plaintiffs' argument that the wildfire smoke rules are unconstitutionally vague because they do not provide employers with a means to determine whether particulate matter from wildfire smoke is contained within the PM2.5 contaminants present at specific work sites. *See id.* ¶¶ 28, 40. The rule is clear that the standard and protocols apply whenever employees are or will be exposed to wildfire smoke where the AQI for PM2.5 is at or above 101. Compl., Ex. 2 at 8 (OAR 437-002-1081(1)); *id.* at 17 (OAR 437-004-9791(1)). That the rule does not dictate the *particular means* through which employers are required to make a determination as to whether wildfire smoke is a contributing factor does not render the clear standard impermissibly vague. Common sense (and the experience of Oregonians who have lived through recent wildfire seasons) confirms that employers of reasonable intelligence have ample means to make a determination as to whether wildfire smoke is impacting air quality, often through their own observations and senses, as well as access to significant publicly available information regarding the location of wildfires and their zone of impact.[11] The

---

[11] Defendants recognize that this is not an evidentiary motion, but Defendants anticipate that, should this case proceed to discovery, the evidence will demonstrate that even at the lowest AQI level covered by the rule (at or above AQI 101 for PM2.5), the PM2.5 in the air will be comprised of PM2.5 primarily from wildfire smoke.

Page 18 -  **MOTION TO DISMISS**

Complaint itself, in quoting portions of the rule, acknowledges that employers have access to such public information by checking the "Interagency Wildland Fire Air Quality Response Program website[]" and/or checking "notifications of air quality advisories due to wildfire smoke issued by the Oregon Department of Environmental Quality or local government health agencies." *E.g.*, Complaint ¶ 27 (quoting OAR 437-002-1081(3)(a) & (b)).

Plaintiffs' second argument, that the smoke rules provide "inconsistent requirements" for measuring PM2.5 at any given site, is a nonstarter. The rules are not inconsistent; rather, the rules are entirely clear in that they provide employers with flexibility to use any of three listed methods to monitor air quality, and a fourth visual test method when the first three methods are unavailable. *See* Compl., Ex. 2 at 9 (OAR 437-002-1081(3)); *id.* at 18 (OAR 437-004-9791(3)). In fact, Plaintiffs' Complaint acknowledges that the smoke rules "contain provisions advising employers that they can comply with the requirements to monitor AQI" by using any one of the four methods. Compl. ¶ 27.[12] Similarly, the rules are clear that an employer who fails to use one of the listed methods to monitor air quality would be in violation of the rule. For this reason, the smoke rules' monitoring requirements obviously give "fair warning of what is proscribed." *See, e.g.*, *Vill. of Hoffman Estates*, 455 U.S. at 503.

Finally, Plaintiffs (contrary to their own quotation of the monitoring requirements (Complaint ¶ 27)) purport to claim that the rules "require use of a metric for measuring PM2.5 contaminants (the AQI) which will be predictably imprecise for a particular worksite." Compl.

---

[12] Plaintiffs' allegations in paragraph 27 of the Complaint entirely undermine their later allegation in paragraph 41 that the rule provides "inconsistent requirements."

Page 19 - **MOTION TO DISMISS**

¶ 42.  As stated previously, the AQI is an "indicator" developed by the EPA of "overall air quality" based on the five criteria pollutants regulated under the Clean Air Act.  Compl. ¶ 25; Compl., Ex. 2 at 9 (OAR 437-002-1081(2)(a)); *id.* at 17 (OAR 437-004-9791(2)(a)).  There can be no serious argument that the wildfire smoke rules are unconstitutionally vague because they allow employers to monitor air quality through a metric developed by the EPA.  Regardless, Plaintiffs' allegation that employers are required to measure PM2.5 by reference to the AQI is clearly wrong.  As discussed above—and as Plaintiffs' Complaint acknowledges—the text of the rules permits employers to use any one of four methods to monitor air quality, only one of which explicitly is based on the AQI, and one of which allows employers to use a testing device at their specific location to "[d]irectly measure workplace ambient air concentration for PM2.5 in accordance with the testing device manufacturer's user instructions."  Compl., Ex. 2 at 9 (OAR 437-002-1081(3)); *id.* at 18 (OAR 437-004-9791(3)).

Plaintiffs have not, and cannot, state a claim that the smoke rules at issue are unconstitutionally vague.

Plaintiffs' Count 1 of the First Claim for Injunctive Relief and Count 1 of the Second Claim for Injunctive Relief (alleging violations of constitutional due process) must be dismissed under Fed. R. Civ. P. 12(b)(6).

### D.    All Claims Relating to OAR 437-002-1080 Must Be Dismissed, as No Such Rule Exists.

Plaintiffs purport to assert claims for relief based on "OAR 437-002-1080," which Plaintiffs assert is a rule entitled, "Protection from Wildfire Smoke."  *See* Compl. ¶¶ 40-44, 53-57.  Plaintiffs are incorrect.  No such administrative rule exists.  Instead, the smoke rules are found at OAR 437-002-*1081* and OAR 437-004-9791.

Page 20 -  **MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

All claims relating to and/or seeking to invalidate "OAR 437-002-1080" must be dismissed for failure to state a claim.

## V.    CONCLUSION

For the reasons stated herein, Defendants respectfully request the Court dismiss all claims against Defendants.

DATED this 2nd day of September, 2022.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: s/ Jennifer S. Wagner
    **Jennifer S. Wagner,** OSB No. 024470
    **Lydia Anderson-Dana**, OSB No. 166167
    **Elizabeth K. Bailey**, OSB No. 172956
    **Madeleine C. Holmes**, OSB No. 193803

209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email: jwagner@stollberne.com
      landersondana@stollberne.com
      ebailey@stollberne.com
      mholmes@stollberne.com

*Special Assistant Attorneys General for Defendants*

Page 21 -  **MOTION TO DISMISS**